**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF KENTUCKY**
**LEXINGTON DIVISION**

IN RE: GEORGETOWN MOBILE ESTATES, LLC            CHAPTER 11

DEBTOR            CASE NO. 15-50945

**MOTION FOR INTERIM AND FINAL ORDERS AUTHORIZING**
**USE OF CASH COLLATERAL FROM US BANK, aka MIDLAND LOANS SERVICES**

Comes **GEORGETOWN MOBILE ESTATES, LLC**, as Debtor in the above-referenced Chapter 11 bankruptcy case (hereinafter, the "Debtor"), and hereby moves the Court for interim and final orders, pursuant to 11 U.S.C. Section 363(c) approving the Debtor's use of cash collateral pledged U.S. Bank National Association, as Trustee, in Trust for the Holders of COMM 2013-CCRE8 Mortgage Trust Commercial Mortgage Pass-Through Certificates (a/k/a U.S. Bank National Association, as Trustee for Deutsche Mortgage & Asset Receiving Corporation, COMM 2013-CCRE8 Mortgage Trust, Commercial Mortgage Pass-Through Certificates) by and through Midland Loan Services, a Division of PNC Bank, National Association, its Special Servicer ("Midland"), all as further described herein and in the Proposed Budget same being attached hereto as Exhibit A, and to authorize the Debtor to make adequate protection payments to Lenders. In support of this Motion, the Debtor states, as follows:

1. On May 11, 2015, the Debtor filed its voluntary bankruptcy petition for relief under Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtor is operating its business as debtor and debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2. This Court has subject matter jurisdiction over this Motion pursuant to 28 U.S.C. Section 1334. This is a core proceeding pursuant to 28 U.S.C. Section 157(b)(2)(A). The Court can exercise its subject matter jurisdiction pursuant to 28 U.S.C. Section 157(b)(1). Venue of this

case and this Motion is proper in this district pursuant to 28 U.S.C. Sections 1408 and 1409. No request has been made for the appointment of a trustee or examiner, and no committee has been appointed in this case.

### Debtor's Background

3. The Debtor is a Kentucky limited liability corporation incorporated on January 23, 2006 with offices in Georgetown, Kentucky. The Debtor operates a mobile home park located on the Scott County-Fayette County border in central Kentucky. Debtor's income is generated from the rental of the real estate lots to a maximum of 504 customers. Historically, the Debtor maintained a 92% occupancy rate. It is necessary to provide certain services to customers, including maintaining private roads, road signs and an on-site water treatment plant. Rent is collected and bills are paid to vendors and service companies. Mr. Sexton, the Debtor's principal, is the third generation in his family to own this mobile home park and it has been in the family for over 40 years.

4. Around 2006, Mr. Sexton and Jonathan Williams, CPA of Nicholasville, KY, obtained certain debts against the mobile home park in order to satisfy taxes from Mr. Sexton's mother's estate and also to obtain some of the equity. In 2011, Mr. Sexton borrowed $10 million from C3 Corp for a one year short term loan. Mr. Williams was hired to operate the Debtor's business and paid bills to creditors. Inconsistent payments were made to C3 Corp, and a default was declared. Mr. Sexton refinanced that loan with a commercial mortgage backed security "CMBS Loan" on May 16, 2013 for $10,750,000 ("CMBS Loan"). The FMV of the real estate was appraised at $16 million when Cantor Commercial Real Estate Lending approved the loan. The CMBS Loan was serviced by Midland Loan Services and was a complicated transaction.[1] After

---

[1] CMBS type loans are frequently less desired to finance multi-unit residential real estate because lenders typically charge higher interest rates and procure non-recourse loans with extremely strict and unforgiving terms and conditions. These loans, issued through banks, bundled together by Wall Street, are sold as securities. They were the crux of the financial meltdown in the last seven years. CMBS loans are serviced by servicing agents who

closing, Jonathan Williams continued to operate the business and was supposed to pay creditors, but he failed to pay any monthly payments to Midland of $87,217.98. Upon knowledge of the default, Mr. Sexton fired Jonathan Williams on January 20, 2014. By the time Mr. Sexton had taken back full control of the Debtor after firing Mr. Williams on January 20, 2014, the CMBS Loan had been transferred to Special Servicing at Midland. Midland initiated the foreclosure proceeding in the U.S. District Court for the Eastern District of Kentucky on April 28, 2014, and obtained a judgment and order of sale on February 18, 2015. During the course of litigation, Midland also had the mobile home park put into the hands of a receiver which has resulted in a reduction of the occupancy rate from approximately 92% to 72%. An auction was scheduled for Monday, May 11, 2015, at noon, which precipitated the filing of this petition.

     5.     The Debtor's filing of its Chapter 11 bankruptcy on Monday morning, May 11, 2015.

     6.     Notably, the major secured creditor of the Debtor is Midland which holds a first a first and prior security interest in all assets of the Debtor, including an assignment of leases and rents. Other secured creditors are identified in that certain Notice of Filing of Loan Documents [Doc. #10], which Summary of the active UCC-1 Financing Statements describes the positions of the other secured creditors herein.

## Relief Requested

     7.     To the extent that Midland claims an interest in Cash Collateral, the Debtor requests the authority to use the Cash Collateral on an interim basis and for this Court to set a

---

typically look for the first opportunity to commence foreclosures in the event of the slightest default. In this case, Midland Loan Services is a 'for profit' subsidiary of PNC Bank that aggressively pursues troubled real estate assets, particularly when they recognize a high real estate value to debt. These lenders are usually unforgiving, even when a borrower has the ability to correct the default, which in this case Georgetown Mobile Estates did. Unfortunately, the person responsible for making the loan payments failed to do so and re-directed the funds for personal use. Instead of allowing a short term cure after the person responsible for failing to pay the debt was fired, foreclosure proceedings commenced in April, 2014.

final hearing for continued cash use and approve a permanent cash collateral order mentioned hereinafter. As used herein, "Cash Collateral" shall mean (i) all cash, negotiable instruments, coal inventory, mining supplies, accounts receivables, pre-paid royalties, deposit accounts or other cash equivalents derived from any secured creditor's collateral; and (ii) proceeds, rents or profits of any secured creditor's collateral, including without limitation, all amounts generated by the Debtor's operations, both pre-petition and post-petition, and received by the Debtor.

8.    The Debtor's use of the Cash Collateral is essential to continue the business operations during this Chapter 11 bankruptcy case and to ensure a continued going concern value of its operations to maximize the recovery to all creditors. Without the use of Cash Collateral as a means of working capital, the Debtor cannot meet its ongoing obligations incurred in the ordinary course of business. In short, the Debtor is unable to operate without the use of Cash Collateral. Entry of the Interim Order is necessary to avoid immediate and irreparable harm to the Debtor's operations, its creditors and other parties-in-interest.

9.    Code Section 363(c) provides that a debtor "may not use, sell or lease cash collateral . . . unless (A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale or lease in accordance with the provisions of this section."

10.    As adequate protection for Midland's lien upon the Cash Collateral, the Debtor proposes to account for all cash used and the proposed expenses being incurred, and to preserve the property of the Debtor's estate. Through Debtor's management of the property, occupancy can return to its historic 90%+ level. The Debtor is in the process of implementing a business plan designed to reduce costs, improve operations, increase lot rental, and enhance the Debtor's long-term viability. The Debtor believes that these changes along with its cost cutting measures of retaining lower management costs, focused marketing techniques, and a restructuring of debt

obligation will enable the Debtor to undergo a successful reorganization.

11.    Notice of this Motion and the hearing therein has been given by e-mail to jwilliams@stites.com, the attorney for Lenders. The Certificate of Service of this Motion also describes the service of this Motion upon other parties-in-interest. The Debtor believes that entry of interim and final cash collateral orders are in the best interest of the Debtor, its estate and the creditors, and does not prejudice the rights of any party-in-interest in this case.

**WHEREFORE**, the Debtor respectfully requests the Court to enter an Order approving an interim order authorizing the Debtor to use the Lender's cash collateral, to grant a replacement lien upon the post-petition assets of the Debtor, to authorize the Debtor to make the payments to third-parties described in the Budget attached hereto, to begin making adequate protection payments to the Lenders at a future date to be determined, and for all other relief to which the Debtor may appear entitled.

**NOTICE** is hereby given that the Debtor will bring this Motion on for expedited telephonic hearing on Thursday, May 14, 2015 at 2:00 p.m., with the Toll Free Call-in Number of 1-888-363-4749 with Participant Code Number of 6879731 with Security Code Number of 22852, before this Honorable United States Bankruptcy Court for the Eastern District of Kentucky.

    Respectfully submitted,

    **BUNCH & BROCK**

    **By:**   **/s/ Matthew B. Bunch**
          MATTHEW B. BUNCH
          271 West Short Street, Suite 805
          Lexington, Kentucky 40507-1217
          (859) 254-5522

    **PROPOSED DEBTOR'S COUNSEL**

## **CERTIFICATE OF SERVICE**

This is to certify that this Motion was served electronically in the method established under CM/ECF Administrative Procedures Manual and the Local Court Standing Order dated July 25, 2002, and by e-mail upon the Master Service List on May 11, 2015.

    **/s/ Matthew B. Bunch**
    **MATTHEW B. BUNCH**